UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LORAN NORTHROP,

        Plaintiff,

v.

SAFEWAY, INC.,

        Defendant.

C16-350 TSZ

ORDER

THIS MATTER comes before the Court on defendant Safeway, Inc.'s ("Safeway") motion for summary judgment, docket no. 39. By Minute Order dated April 24, 2017, the Court granted Safeway's motion as to plaintiff's claims for disability-based hostile work environment in violation of the Americans with Disabilities Act ("ADA") and the Washington Law Against Discrimination ("WLAD") and for negligent infliction of emotional distress, and denied Safeway's motion as to plaintiff's claims for disability discrimination and retaliation. The Order below explains the Court's decision to dismiss plaintiff's claims for hostile work environment and negligent infliction of emotional distress.

**Background**

The following facts are set forth in the light most favorable to plaintiff.[1]

---

[1] Because the parties are familiar with the facts of this Case, the Court only briefly sets them forth here, focusing primarily on the alleged harassment that forms the basis of Mr. Northrop's hostile work environment claim.

ORDER - 1

Plaintiff Loran Northrop is a 51 year-old man who has been diagnosed with a variety of emotional and psychological disorders over the course of his lifetime. Decl. of Loran Northrop, docket no. 56, ¶ 3. Mr. Northrop's current diagnoses range from schizophrenia, Decl. of Michael Reilly, docket no. 49, Ex. B ("Lucuab Dep.") at 12:6-14:9 and Exhibit 3 at p. 64, to depression and developmental delay, Northrop Decl., Ex. 3 at 3. Prior to his employment at Safeway, Mr. Northrop was unemployed and collecting Social Security disability benefits. Reilly Decl., Ex. A ("Northrop Dep.") at 7:8-22, 102:24-103:2. In 2013, Mr. Northrop began working with the Washington State Department of Vocational Rehabilitation ("DVR") in an attempt to re-enter the workforce. Northrop Dep. at 103:3-104-10. In September 2013, Safeway hired Mr. Northrop to work in the deli section of the new Issaquah Highlands store. Northrop Decl. at ¶ 6. Mr. Northrop was hired as a "Deli-Helper (China Express)," Lucuab Dep. at 22:23-23:5 and Ex. 6 at p. 71, which Mr. Northrop explains involved part time relief of the head "China Chef" at Safeway's Issaquah Highlands store, Northrop Decl. at ¶ 7. Safeway employees in Mr. Northrop's position mostly perform deli-duties, such as making sandwiches, slicing meat, and cleaning, and are tapped to perform China Chef duties when the full-time China Chef is away. Decl. of Bridget Stahlman Sutter ("Stahlman Decl."), docket no. 44, ¶ 3.

In November 2013, Safeway shifted Mr. Northrop's responsibilities away from his back-up China Chef duties, assigning him primarily to his other responsibilities in the deli, such as making sandwiches, cutting meat, and cleaning tasks. Stahlman Decl. at ¶¶ 3, 5. It was around this time that Mr. Northrop alleges the harassment began. Mr. Northrop recalls a meeting with Store Manager Brett Dow, where Mr. Dow told

ORDER - 2

Mr. Northrop that he wanted him to do "cleanup grunt work behind in the deli and the bakery, anywhere [Mr. Northrop] was not seen by the public." Northrop Decl. at ¶ 12. At the end of this interaction, Mr. Northrop alleges that he heard Mr. Dow mumble the words "mental retard" as Mr. Dow walked away. *Id.*; Northrop Dep. at 209:14-25.

Beginning in March of 2014, Mr. Northrop alleges somewhat more frequent instances of harassment. On one occasion, Mr. Dow complained to Mr. Northrop about an incident where Mr. Northrop walked away from a customer after fulfilling only a portion of her order. Northrop Decl. at ¶ 24; Northrop Dep. at 150:12-152:25. Mr. Northrop testified that after this interaction he "believe[s]" he heard Mr. Dow mumble "mental retard" but he "wasn't too sure." Northrop Dep. at 210:4-211:4. Mr. Northrop also testified that other store employees called him a mental retard on several occasions, all in March of 2014. According to Mr. Northrop, deli-manager Bridget Stahlman Sutter called him a mental retard two times, Northrop Dep. at 205:7-8, coworker Adrienne Slaughter called him a mental retard three times, *id.* at 196:18-200:8, and a second co-worker, Paula,[2] said to Mr. Northrop "you have SSDI, why don't you mental retards just collect SSDI and not work here, *id.* at 200:19-201:23. Mr. Northrop never reported or complained about any of this behavior to Safeway. *Id.* at 204:5-14.

The final instance of harassment alleged by Mr. Northrop occurred on April 24, 2014, during a meeting with Mr. Dow. Mr. Northrop filed a discrimination charge with the Washington State Human Rights Commission on April 1, 2014, Northrop Decl. at ¶ 27, and Mr. Northrop alleges that during the April 24, 2014, meeting Mr. Dow told him

---

[2] Both Mr. Northrop and Safeway identify "Paula" only by her first name.

ORDER - 3

"I know you filed a complaint against Safeway and I want you to drop it [and] I'm going to drop your medical insurance." Northrop Dep. 214:12-215:7. According to Mr. Northrop, when he began to move towards the door to leave the meeting, Mr. Dow grabbed him by the arm and said "you're going to stay here and we're going to continue this and you're going to do what I order you to do or I'll make it hard—I'll make it difficult for you." Northrop Dep. 216:2-24. Mr. Northrop contends that Mr. Dow continued, saying that he was "going to be changing [Mr. Northrop's] shift" and his schedule and that Mr. Dow was going to change his job duties to "grunt work" and "cleanup work, behind the scene." Northrop Dep. at 217:5-21. Mr. Northrop testified that when he was finally able to withdraw from the room, Mr. Dow again called him a mental retard as he was leaving. Northrop Dep. 218:1-7. Mr. Northrop was so upset by the ordeal that he left his shift early and went directly to Harborview for mental health treatment. Northrop Decl. at ¶ 29.

### A. Legal Standard

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While "all justifiable inferences" are to be drawn in favor of the non-moving party, *id.* at 255, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party,

summary judgment is warranted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

**B. Disability-Based Hostile Work Environment**

To establish a *prima facie* case of disability-based hostile work environment[3] under federal law, a plaintiff must show that (1) he has a disability; (2) that he was subjected unwelcome harassment, (3) that the harassment was based on his disability; (4) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive working environment; and (5) that the employer knew or should have known about the harassment and failed to take prompt action to stop it.[4] *Linder v. Potter*, 2009 WL 2595552, at *12 (E.D. Wash. Aug. 18, 2009).

Here, plaintiff's allegations of harassment are insufficiently severe or pervasive to rise to the level of "a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21 (1993). In evaluating whether an environment is sufficiently hostile or abusive to sustain a hostile work environment claim, courts "look at 'all the

---

[3] The Ninth Circuit has assumed, without deciding, that a hostile work environment claim exists under the ADA. *See Garity v. APWU National Labor Organization*, 655 F. App'x 523, 524 (9th Cir. 2016). Other circuits, however, have explicitly recognized the existence of a cause of action for hostile work environment under the ADA. *See Fox v. General Motors Corp.*, 247 F.3d 169, 175 (4th Cir. 2001); *Flowers v. Southern Regional Physician Servs., Inc.*, 247 F.3d 229, 233 (5th Cir. 2001); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 719-20 (8th Cir. 2003). Consistent with other district courts in this circuit, the Court assumes, without so holding, that a cause of action for hostile work environment under the ADA is cognizable. *See, e.g.*, *Roberts v. Dimension Aviation*, 391 F. Supp. 2d 985, 988 (D. Ariz. 2004).

[4] Similarly a *prima facie* case of disability-based hostile work environment under Washington law requires proof that (1) plaintiff was disabled; (2) that the harassment was unwelcome; (3) that the harassment was because of plaintiff's disability; (4) that the harassment affected the terms or conditions of employment, and (5) that the harassment was imputable to the employer. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 45 (2002). Under Washington law, harassment affects the terms or conditions of employment if it is "sufficiently pervasive" and creates an "abusive working environment," and is imputable to the employer where the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. *Id.* at 46-47.

ORDER - 5

circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). A plaintiff must prove that his workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (citing *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." *Glasgow v. Georgia-Pac. Corp.*, 103 Wn.2d 401, 406 (1985). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted). Courts must keep in mind that they are not enforcing a "general civility code" and that "evidence showing sporadic use of abusive language . . . jokes, and occasional teasing" are insufficient to establish a violation of the law. *Wahlman v. DataSphere Technologies, Inc.*, 2014 WL 794269, at *6 (W.D. Wash. Feb. 27, 2014) (quoting *E.E.O.C v. Prospect Airport Serv. Inc.*, 621 F.3d 991, 998 (9th Cir. 2010)).

Mr. Northrop contends that the name calling and aspersions to his mental acuity, and the April 24 incident with Mr. Dow are sufficient to render the work environment objectively hostile. However, the occasional insults by co-workers and supervisors to

ORDER - 6

which Mr. Northrop was allegedly subjected, though undoubtedly unpleasant, was nothing more than isolated teasing and offhand comments insufficient to give rise to an actionable claim for hostile work environment.[5]  *See, e.g.*, *Manatt v. Bank of America, NA*, 339 F.3d 792, 798-99 (2003) (race-based jokes in which the word "China-man" was used, ridicule for mispronouncing the word "Lima," and an isolated instance of imitating or mocking the appearance of Asians was "neither severe nor pervasive enough to alter the conditions of Manatt's employment"); *Brediger v. General Nutrition Corp.*, 2015 WL 5797095, at *5 (W.D. Wash. Oct. 2, 2015) (occasional derogatory comments about women and comments questioning the plaintiff's sexual orientation not sufficiently pervasive or severe to sustain claim for hostile work environment).  Though Mr. Northrop's account of his April 24, 2014, encounter with Mr. Dow is troubling, the isolated incident, even when considered in conjunction with the occasional name-calling Mr. Northrop experienced, is not of the requisite severity to generate a cognizable claim for hostile work environment.  *See Faragher*, 524 U.S. at 788 (noting that isolated incidents of harassment by supervisors will not amount to discriminatory changes in the terms and conditions of employment unless extremely serious); *see also Weiss v. Coca-Cola Bottling Co. of* Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (holding that a supervisor's asking for dates, calling plaintiff a "dumb blond," placing his hand on her shoulder several times, placing I love you signs in her work area, and attempting to kiss plaintiff multiple times were insufficiently pervasive or severe to give rise to a cognizable

---

[5] Moreover, Mr. Northrop has offered no evidence that Safeway authorized, knew, or should have known of the harassment by his co-workers given that he never reported their behavior to Safeway.  Accordingly, the conduct of Mr. Northrop's co-workers cannot be properly imputed to Safeway for the purposes of establishing a hostile work environment.  *See Swenson v. Potter*, 271 F.3d 1184, 1191-92 (9th Cir. 2001) (noting that an employer cannot be held liable for misconduct of which it is unaware).

ORDER - 7

claim for hostile work environment). Mr. Northrop was not physically injured as a result of Mr. Dow's alleged arm-grabbing and, although certainly unwelcome and uncomfortable, the incident is a relatively minor allegation of physical harassment. *See Hostetler v. Quality Dining Inc.*, 218 F.3d 798, 808 (7th Cir. 2000) (noting that relatively minor instances of isolated physical harassment, such as a hand on the shoulder, a brief hug, or a peck on the cheek, are typically of insufficient severity to be actionable). Instances in which courts *have* found an actionable hostile work environment claim involve conduct significantly more severe and/or pervasive than the harassment alleged here. *See, e.g. Nichols*, 256 F.3d at 872-73 (finding a hostile work environment where a male employee was called a "faggot" and a "fucking female whore" by co-workers and supervisors at least once a week and often several times per day); *Hostetler*, 218 F.3d at 807-09 (finding an actionable hostile work environment claim where plaintiff's supervisor grabbed her face and stuck his tongue down her throat on one occasion, unfastened her brassiere on another, and told her during a third that he could perform oral sex on her so effectively that she would do cartwheels). "Physical harassment lies along a continuum just as verbal harassment does," *Hostetler*, 218 F.3d at 808, and the totality of the harassment alleged here is simply too infrequent and too minor to give rise to an actionable claim for hostile work environment.

**C. Negligent Infliction of Emotional Distress**

Under Washington law, an employee may recover damages for emotional distress in an employment context, but only if the factual basis for the claim is distinct from the facts supporting the employee's claim under the WLAD. *See Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 864-65 (2000); *see also Little v. Windermere*

*Relocation, Inc.*, 301 F.3d 958, 972-73 (9th Cir. 2002) (concluding that because the factual basis of plaintiff's claim for negligent infliction of emotional distress formed an integral part of her discrimination claim, her claim for negligent infliction of emotional distress was not cognizable under Washington law). Here, Mr. Northrop's claim for negligent infliction of emotional distress is based on the same allegations of discriminatory conduct that underlie his claims for retaliation and hostile work environment, the April 24, 2014, incident with Mr. Dow. *See* Response, docket no. 54, at 27-28. Because Mr. Northrop's claim for negligent infliction of emotional distress is coextensive with his claims under the WLAD, the claim fails as a matter of law. *See Wood v. Gonzaga University*, 2006 WL 1375197, at *7 (E.D. Wash. May 16, 2006) (noting that plaintiff had no separate compensable claim for negligent infliction of emotional distress where the factual basis for such claim was the same as his retaliation claim).

## **Conclusion**

For the foregoing reasons, plaintiff's claims for disability-based hostile work environment and negligent infliction of emotional distress are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 27th day of April, 2017.

Thomas S. Zilly
United States District Judge